# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PEDRO SILVA CHIPREZ, JOSE ISABEL GARCIA-MEZA, SAMUEL SILVA-CHIPREZ, JORGE RUBIO MONTERO, and FRANCISCO JAVIER PLAZOLA-CHIPRES,<br><br>    Defendants. | NOS. CR-06-2121-RHW-1<br>CR-06-2121-RHW-2<br>CR-06-2121-RHW-4<br>CR-06-2121-RHW-6<br>CR-06-2121-RHW-7<br><br>**ORDER ON VARIOUS PRETRIAL MOTIONS** |

The Court held a hearing on numerous pretrial motions in the above-captioned matter on July 20, 2010. The Government was represented by Assistant United States Attorney Robert Ellis. All Defendants were present. Defendant Pedro Chiprez was represented by George Trejo, appearing telephonically; Defendant Jose Garcia-Meza was represented by Troy Lee; Defendant Samuel Silva Chiprez was represented by Ricardo Hernandez; Defendant Jorge Rubio Montero was represented by Nicholas Marchi; and Defendant Francisco Plazola-Chipres was represented by Gregory Scott.

At the hearing, only Defendant Samuel Silva Chiprez presented oral argument on one motion: his Motion for Reconsideration (Ct. Rec. 871). The Court denied that motion for the reasons stated at the hearing. The parties identified several motions they asked to submit on the briefs. The Court rules on those motions below. The parties also identified several motions as moot, and those

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 1

motions are accordingly denied below. Finally, the Court ruled that any motion not specifically identified by a party at the hearing would be denied as moot.

### MOTIONS SUBMITTED ON THE BRIEFS

*1.  Defendants' Motions to Exclude Expert Testimony re: Code Words (Ct. Recs. 335, 647, & 653)*

Defendant Montero filed one of these motions in March 2007 (Ct. Rec. 335), then renewed it with a substantially identical motion in October 2009 (Ct. Rec. 647). Defendant Samuel Silva Chiprez also filed a substantially identical motion (Ct. Rec. 653).

The Government intends to offer at trial two law enforcement officers as experts on "code words" used in the taped conversations. Defendants argue that the Government has not offered qualifications for these "experts," and request a *Daubert* hearing. The Government responds that expert testimony of this kind has previously been accepted in the Ninth Circuit, citing *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998). The Government also acknowledges that the experts will need to be qualified in court, but argues that the *Daubert* factors are inapplicable.

At the hearing, Defendant Samuel Silva Chiprez acknowledged that the Government has completed its expert disclosures, so any procedural objections to the admission of expert testimony are now moot. As to Defendants' substantive objections to admissibility, the Court finds that the relevance and foundation of any expert testimony cannot be determined outside of the context of trial. Because Defendants have not proffered their own experts or identified any other reason why a pretrial hearing on admissibility would be necessary, the Court will reserve ruling on this issue until trial. Therefore, these motions are denied with leave to renew.

*2.  Defendant Montero's Motion for Severance (Ct. Rec. 337)*

"Co-defendants jointly charged are, *prima facie*, to be jointly tried." *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991). However, defendants may

**ORDER ON VARIOUS PRETRIAL MOTIONS** \* 2

overcome this "heavy burden" by showing that a joint trial would be so prejudicial as to require severance. *Id.* Defendant presents three arguments for severance: (1) Defendant's co-conspirators will be unlikely to make exculpatory statements of benefit to Defendant Montero if all Defendants are joined; (2) a jury is likely to find Defendant guilty by association; and (3) there is *Bruton* problem with co-Defendants' statements.

As to the first argument, Defendant does not identify which co-Defendant may testify, what that person might say, nor how exculpatory such testimony would be – all of which are required by the case law. *Mariscal*, 939 F.2d at 885-86. As for his second argument, the Ninth Circuit generally recognizes that juries are able to compartmentalize evidence against particular defendants, absent some extreme circumstances. *See, e.g., United States v. Ramirez*, 710 F.2d 535, 547 (9th Cir. 1983). Defendant does not attempt to identify any such extreme circumstances that might create a "spill-over" effect here.

As to Defendant's final argument, the Government concedes that one co-Defendant's statement creates a *Bruton* problem, but argued at the hearing that the problem could be cured by simple redaction. The Court directed the Government to redact the statement and serve it upon any affected Defendants no later than **July 27, 2010**.

For the foregoing reasons, the Court denies the motion, with leave to renew if Defendant objects to the Government's proffered redacted statement.

3.      *Defendant Montero's Motion to Suppress (Ct. Rec. 340)*

Defendant argues that the affidavit for a warrant to search his residence lacked probable cause, for two reasons: (1) it failed to establish the reliability of informants; and (2) there were material misrepresentations and omissions. The search warrant affidavit recites three separate controlled buys that implicated Defendant's residence, 1761 Outlook Road in Outlook, Washington, as a stash house for methamphetamine. (Ct. Rec. 340-2, ¶¶ 20-22). Defendant presents a

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 3

conclusory argument that the affidavit failed to establish the reliability of the informants involved in these controlled buys. However, the Court finds that the reliability of the informants is irrelevant. Physical surveillance observed co-Defendant Pedro Chiprez and/or an associate travel to Defendant's residence on three separate occasions in the middle of controlled buys, under circumstances supporting an inference that Chiprez and/or his associate were retrieving or purchasing methamphetamine from someone at Defendant's residence. Even if the informants were wholly unreliable, these three instances of physical surveillance are sufficient to establish probable cause to believe that a crime (possession of methamphetamine) was being or had been committed at that residence. *See United States v. Bishop*, 264 F.3d 919, 926 (9th Cir. 2001) (holding that officers' corroboration of a potentially unreliable informants' information sufficed to establish probable cause).

Next, Defendant presents another conclusory argument in support of his request for a *Franks* hearing, arguing that the affiant recklessly failed to address the informants' reliability, and recklessly failed to provide the application that had been made in support of the wiretap. As set forth above, the Court finds the informants' reliability to be irrelevant, and therefore rejects the first part of this argument. Moreover, even if all the information adduced from the wiretap was stricken from the affidavit, the Court finds that the three instances of physical surveillance described above would suffice to support probable cause. Therefore, the Court rejects this argument as well.

Accordingly, the motion is denied.

4. *Defendant Wendy Chiprez's Motion to Suppress Overbroad Search Warrants (Ct. Rec. 627)*

Defendant Wendy Chiprez previously pleaded guilty to a misdemeanor and was sentenced. However, before entering that plea, she filed several motions that co-Defendant Samuel Silva Chiprez asked the Court to hear. Despite Defendant

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 4

Wendy Chiprez's absence from the case, this motion remains ripe because it applies to the nearly identical search warrants that were issued for each residence involved in the case. The Government argues that Wendy Chiprez lacked standing to bring this motion, but the Court rejects that argument because each Defendant – including the actual owners and residents of the residences in question – have joined in this motion.

At issue is an Attachment B, "Items To Be Seized," which was part of each search warrant. The Attachment directs executing officers to seize:

> Evidence of narcotics trafficking and use of a communication device to violate the Controlled Substances Act in violation of 21 U.S.C. §§ 841, 844, and 846, specifically the following:
> A. Documents to include but not be limited to phone bills, notes, phone numbers, photographs, ledgers, receipts, utility records, vehicle titles and registrations, calling cards, and records to indicate sources of income.
> B. Communication devices to include cellular type telephones, pagers, two-way pagers, and personal data managers.
> C. Drug Paraphernalia to include but not be limited to, mechanical and electronic scales, cutting agents, and packaging materials and devices.
> D. Proceeds of drug sales to include but not be limited to United States Currency, jewelry, personal checks, cashiers checks, negotiable security, precious gems, and precious metals.
> E. Controlled Substances
> F. Firearms & Ammunition

(Search Warrant for 1761 North Outlook Road, Outlook Washington, Ct. Rec. 340-2, Attachment B).

Defendants argue that this list of items was unconstitutionally overbroad and fails to describe with sufficient particularity the items to be seized. Defendants rely primarily on *United States v. Hurt*, 795 F.2d 765, 772 (9th Cir. 1986), which states: "The purpose of particularizing the items to be seized is to insure that when the warrant is executed, *nothing* is left to the officer's discretion" (emphasis added by Defendants). This language appears to be drawn from an older Supreme Court case, *Stanford v. Texas*, 379 U.S. 476, 485 (1965). However, more recent cases in this Circuit suggest that the relevant standard is not whether the search warrant allowed officers *any* discretion at all, but rather whether the search warrant

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 5

"adequately confined" officers' discretion. *See, e.g., United States v. Young*, 420 F.3d 915, 917 (9th Cir. 2005); *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000) (search warrant must provide "meaningful guidance to the officer charged with its execution"). As Defendants acknowledge, the leading case on particularity in the Ninth Circuit is *United States v. Spilotro*, which instructs courts reviewing particularity challenges to determine "whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not." 800 F.2d 959, 963 (9th Cir. 1986). By its very nature, this standard recognizes that where a search warrant sets out a type or category of items to be seized, officers will have to exercise some discretion in determining whether a specific item falls into that category. Except in the rare circumstance where affiants know precisely which items should be seized, a search warrant will by necessity have to identify items by type or category. The questions then become: (1) is there probable cause to seize items of that category; (2) is the category defined with sufficient particularity; and (3) could the affiant have described the category more particularly in light of the information available to the Government at the time? *See Spilotro*, 800 F.2d at 963 ("Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible.").

      Defendants make much of the "to include but not be limited to" language repeated in the search warrants. As the Government points out, the Ninth Circuit has recognized that this type of language does not by itself render a search warrant *per se* overbroad. *See, e.g., United States v. Shi*, 525 F.3d 709, 731-32 (9th Cir. 2008). Rather, "[t]he specificity required in a warrant varies depending on the circumstances of the case and the type of items involved." *Spilotro*, 800 F.2d at 963.

      Here, Attachment B specified that the items to be seized were limited to evidence of two crimes, identified by name and statute: narcotics trafficking and

**ORDER ON VARIOUS PRETRIAL MOTIONS** \* 6

use of a communications device to facilitate the same. The warrant then further limited the scope of the search to six generic categories, and gave examples of the types of items that might fit in each category. Defendants do not argue that the Government generally lacked probable cause to seize items in these categories, nor do they point to any specific knowledge the Government possessed at the time that would have enabled a more precise description. Instead Defendants point to the types of items that were actually searched and seized, including the vehicle of Wendy Chiprez's stepfather (not a suspect), drivers' licenses, and naturalization documents, to support their argument that the search warrant lacked particularity. Defendants argue that the search warrants "authorized the agents to indiscriminately seize documents and photographs, even when they bore no relation to drug trafficking or even to determining sources of income, thus destroying any grounding in probable cause." (Ct. Rec. 628, p. 11). However, the search warrant specifically limited the types of documents and photographs that could be seized to those that were "[e]vidence of narcotics trafficking and use of a communication device to violate the Controlled Substances Act."

Like the search warrants approved in *Shi* and *Reeves*, *supra*, the search warrants here explicitly tied categories of items to evidence of specific crimes; unlike the warrants in *United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983) and *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985), cited in Defendants' brief, the warrants here went beyond the mere mention of evidence of a particular crime to limit the search to specific types of evidence of a particular crime. This case involved a relatively large drug trafficking conspiracy, with several alleged members participating in criminal conduct over a period of years. Given the broad nature of that conspiracy, "the circumstances of the case and the type of items involved," *Spilotro*, 800 F.2d at 963, were also necessarily broad. As mentioned above, Defendants do not point to any specific knowledge in the Government's possession that would have facilitated a more precise definition. Under those

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 7

circumstances, the Court sees no indication from the record that a more precise definition was possible, and denies this motion accordingly.

5.  *Defendants' Motions to Dismiss for Violation of Constitutional Right to Speedy Trial (Ct. Rec. 629 & 664)*

"The Sixth Amendment guarantees that criminal defendants shall enjoy the right to a speedy and public trial. To determine whether a defendant's Sixth Amendment speedy trial right has been violated, we balance the following four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008) (internal citations and quotations omitted). Defendants argue that the Government's handling of this case has violated their rights to a speedy trial, and requires dismissal of the Indictment.

Defendant Wendy Chiprez's motion is partially moot because it is based in part upon a showing of prejudice specific to Wendy Chiprez herself. However, the motion's arguments about the Government's handling of the case apply to each Defendant; all Defendants have joined in the motion, and co-Defendant Garcia-Meza has filed a similar motion (Ct. Rec. 664).

The Indictment in this case was issued on July 19, 2006; the case is currently set for trial on October 4, 2010. Therefore, at the time Defendants filed this motion, the length of delay was approximately three years; now, the length has reached approximately four years. A great deal of this delay is attributable to the Government's interlocutory appeal, which consumed approximately 28 months. As the Government points out, the remainder of the delay is attributable to extensive pretrial litigation initiated by all of the Defendants. The case has also been declared complex.

The bulk of Defendants' motion is devoted to an argument that the Government negligently prosecuted its interlocutory appeal. Defendants point to the fact that the Government filed its opening appellate brief approximately one

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 8

month late. The Government responds that it properly sought and obtained from the Ninth Circuit a one month extension to file the brief, and that Defendants also obtained a one month extension to file their responding brief (Ct. Rec. 681, p. 4). Defendants also argue that the delay was extended by the Government's decision to file a bare prosecutor 18 U.S.C. § 3731 certification for the appeal, which did not include a preliminary showing that the excluded evidence was material. The Circuit *sua sponte* withdrew this case from submission in order to rehear an unrelated case *en banc* to decide this collateral issue. The Circuit ultimately determined that such a "bare bones" certification is sufficient. *United States v. W.R. Grace*, 526 F.3d 499, 502 (9th Cir. 2008). That decision was issued on May 15, 2008, approximately four months after oral argument in *Chiprez*. Defendants argue that the Government took no action on the appeal for the next ten months, and that nothing happened with the appeal until defense counsel Nicholas Marchi wrote a letter to the Circuit on March 26, 2009, inquiring about the status of the case. The Circuit then resubmitted the case as of April 3, 2009, "upon counsel's request." (Slip Opinion, p. 1, n. 2). The Slip Opinion was issued on June 22, 2009.

Defendants argue that the Government's prosecution of this appeal evinces bad faith, or at least a reckless delay in order to gain tactical advantages, including three convictions by guilty plea obtained during the pendency of the appeal. The Government responds by arguing that this case is indistinguishable from *United States v. Loud Hawk*, 474 U.S. 302 (1986), in which the Supreme Court held that a 46 month delay caused by the Government's interlocutory appeal did not violate defendants' right to a speedy trial. Defendants reply that *Loud Hawk* was superseded by *Doggett v. United States*, 505 U.S. 647 (1992).

Like *Mendoza*, *supra*, *Doggett* involved a delay of several years between indictment and arrest. Unlike *Loud Hawk*, it did not address a delay caused by interlocutory appeal. It is true that *Doggett* disavowed *Loud Hawk*'s holding that "when defendants are not incarcerated or subjected to other substantial restrictions

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 9

on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." 474 U.S. at 312. However, that holding is not relevant here because the Government does not dispute Defendants' calculation of the length of delay. Moreover, *Doggett* is silent on *Loud Hawk*'s analysis of the delay caused by interlocutory appeal, which is directly relevant here. *Loud Hawk*'s holding on that issue remains good law. *See United States v. Frye*, 489 F.3d 201, 210 (5th Cir. 2007) (applying *Loud Hawk* to a defendant's claim of Speedy Trial Clause violation after the Government's interlocutory appeal); *United States v. Trueber*, 238 F.3d 79, 88 (1st Cir. 2001) (same); *Howard v. Blodgett*, 17 F.3d 394, *2 (9th Cir. 1993) (same) (unpublished).

Therefore, *Loud Hawk* must be the Court's starting point. There, the Supreme Court noted:

> Given the important public interests in appellate review, it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay. In assessing the purpose and reasonableness of such an appeal, courts may consider several factors. These include the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and – in some cases – the seriousness of the crime. For example, a delay resulting from an appeal would weigh heavily against the Government if the issue were clearly tangential or frivolous. Moreover, the charged offense usually must be sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of the appeal.

474 U.S. at 315-16 (internal citations omitted). Also, a crucial factor in *Loud Hawk* was whether the record showed "bad faith or dilatory purpose on the Government's part." *Id.* at 316.

Here, the Court finds that the factors identified in *Loud Hawk* weigh in favor of the Government. Because it prevailed on appeal, the Government's position on the appealed issue was obviously strong. Also, the evidence involved – all of the wiretap evidence and the fruit therefrom – was critical to the Government's case, far from "tangential or frivolous." As for bad faith or dilatory purpose, Defendants argue that the Government intentionally delayed the appeal in order to gain tactical advantages, but that argument depends on a conclusion that the Government's

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 10

delay was *intentional*. No such conclusion is supported by the record. First, it was not unreasonable for the Government to submit a bare bones prosecutor certification, raising a collateral procedural issue on which it ultimately prevailed. That does not evince bad faith, but merely a consistent position on an issue of sufficient importance that the Circuit reheard it *en banc*. The record here could at best support a conclusion that the Government should have inquired about the status of the appeal after *W.R. Grace* was decided, sometime before Mr. Marchi wrote his letter in March of 2009. However, it was the Circuit itself, not the Government, that *sua sponte* withdrew *Chiprez* from submission, and the Court finds it was reasonable for the Government to believe that the Circuit would *sua sponte* resubmit the case for consideration. Therefore, the Court finds the Government's prosecution of the appeal to be reasonably diligent – not negligent, much less reckless or intentional.

      Defendants also argue that the Government could and should have proceeded to trial on those counts not impaired by the suppression of evidence. However, the Court previously decided this issue in the Government's favor by granting a stay (Ct. Recs. 449 & 464). Moreover, it was reasonable to resolve the interlocutory appeal rather than force the Government to proceed to trial on its "imperfect case," *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979), *overruled on other grounds by W.R. Grace*, 526 F.3d at 505. As for the rest of the delay in the case, Defendants point to nothing in the record that approaches the kind of negligent delay recognized in *Mendoza* and similar cases. This case was early declared complex; even at this stage of the proceedings, more than twenty-five motions remain pending, and that is only after the Court previously denied another twenty-four motions as moot. Given the extent and complexity of this pretrial litigation, the Court finds the Government's prosecution of the case to be reasonably diligent.

      Where the Government fulfills its obligation to bring a defendant to trial by

**ORDER ON VARIOUS PRETRIAL MOTIONS** \* 11

pursuing the case with reasonable diligence, "the defendant does not have a speedy trial claim." *Mendoza*, 530 F.3d at 763-64. Therefore, these motions are denied.

6. *Defendant Wendy Chiprez's Motion to Dismiss for Insufficiency or for a Bill of Particulars (Ct. Rec. 734)*

At the hearing, the Government requested a brief extension of time to respond to this motion, which the Court granted without objection. Therefore, the Court reserves ruling on this motion, and the Government is directed to file a response no later than **July 23, 2010**. Defendant may file a reply brief on or before **July 30, 2010.**

7. *Defendant Samuel Silva Chiprez's Motion in Limine to Exclude Chemist's Testimony (Ct. Rec. 757)*

As discussed above, at the hearing Defendant withdrew his procedural objection to the admissibility of this expert's testimony. Defendant also requested a *Daubert* hearing. For the reasons set forth above, the Court denies the request for a pretrial hearing and reserves ruling on admissibility until trial. Therefore, this motion is denied with leave to renew.

8. *Defendant Samuel Silva Chiprez's Motion in Limine to Preclude Credibility Vouching and Witness Bolstering (Ct. Rec. 788)*

At the hearing, the Government conceded this motion and stated its intent not to elicit testimony that constitutes credibility vouching and/or witness bolstering. Therefore, this motion is granted.

9. *Defendant Samuel Silva Chiprez's Motion to Dismiss for Violation of the Speedy Trial Act (Ct. Rec. 794)*

At the hearing, the Government requested an extension of three weeks to respond to this motion, and Defendants did not object. Therefore, the Court reserves ruling on this motion, and the Government is directed to file a response no later than **August 10, 2010**. Defendants may file a reply brief on or before **August 17, 2010**.

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 12

Accordingly, **IT IS HEREBY ORDERED:**

1. The following motions are **DENIED as moot:** Ct. Recs. 333, 334, 341, 342, 414, 569, 613, 622, 633, 638, 731, 788, 791, 797, 800, 823, 825, 827, 839, 841, 857, and 859.

2. Defendants' Motions to Exclude Expert Testimony re: Code Words (Ct. Recs. 335, 647, & 653) are **DENIED with leave to renew.**

3. Defendant Montero's Motion for Severance (Ct. Rec. 337) is **DENIED with leave to renew.**

4. Defendant Montero's Motion to Suppress (Ct. Rec. 340) is **DENIED.**

5. Defendant Wendy Chiprez's Motion to Suppress Overbroad Search Warrants (Ct. Rec. 627) is **DENIED**.

6. Defendants' Motions to Dismiss for Violation of Constitutional Right to Speedy Trial (Ct. Rec. 629 & 664) are **DENIED.**

7. The Court **reserves ruling** on Defendant Wendy Chiprez's Motion to Dismiss for Insufficiency or for a Bill of Particulars (Ct. Rec. 734).

8. Defendant Samuel Silva Chiprez's Motion in Limine to Exclude Chemist's Testimony (Ct. Rec. 757) is **DENIED with leave to renew.**

9. Defendant Samuel Silva Chiprez's Motion in Limine to Preclude Credibility Vouching and Witness Bolstering (Ct. Rec. 788) is **GRANTED.**

10. The Court **reserves ruling** on Defendant Samuel Silva Chiprez's Motion to Dismiss for Violation of the Speedy Trial Act (Ct. Rec. 794).

11. Defendant Samuel Silva Chiprez's Motion to Expedite (Ct. Rec. 869) is **GRANTED**. His Motion for Reconsideration (Ct. Rec. 871) is **DENIED**.

///
///

**ORDER ON VARIOUS PRETRIAL MOTIONS** \* 13

1  **IT IS SO ORDERED.** The District Court Executive is directed to enter this
2  Order and to provide copies to counsel.
3  **DATED** this 26th day of July, 2010.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

Q:\CRIMINAL\2006\06-2121 (Chiprez)\motions.ord.wpd

**ORDER ON VARIOUS PRETRIAL MOTIONS** * 14